IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| RHINO SERVICES, LLC,<br>*Petitioner,*<br><br>v.<br><br>DEANGELO CONTRACTING SERVICES, LLC,<br>*Respondent.* | CIVIL ACTION<br><br>NO. 21-3840 |
|---|---|

**Baylson, J.**                                                                                   **August 10, 2023**

## MEMORANDUM

Federal law has long recognized a strong public interest in arbitration as an alternative means of dispute resolution. Consequently, parties have a very high burden to meet when petitioning a federal court to intervene by vacating an award by an arbitrator. Petitioner's contentions here are not frivolous, but fall far short of carrying that burden. Accordingly, the petition will be denied.

Petitioner Rhino Services, LLC ("Rhino") asks the Court to vacate the arbitrator's adverse decision to award tort damages for the conversion of patented equipment affixed to a truck. Rhino contends that the arbitrator exceeded his authority and committed two manifest errors of law by (1) awarding tort damages for conversion claims which originate exclusively from contractual duties in violation of the "gist of the action" doctrine and (2) finding Petitioner liable for patent infringement, supposedly contrary to the plain language of a bill of sale.

Both arguments fail for the same reason: Petitioner cannot prevail on either claim unless it had purchased the patented equipment ("HFST equipment") at the heart of the conversion claim. The arbitrator had a colorable justification to find otherwise. Thus, the petition fails.

Respondent cross-petitions the Court to confirm the award, award post-judgment interest, and order the handover of the vehicle and equipment at issue. The Court will confirm the

1

arbitration award and award post award interest. But the Court will not modify the arbitration award to order the handover of the vehicle, as Respondent has failed to establish that a modification is warranted under 9 U.S.C. § 11.

I.     FACTUAL BACKGROUND

Petitioner Rhino is a limited liability company domiciled in the state of Georgia. Pet. ¶ 3. It offers industrial and highway construction and maintenance services. Id. ¶ 9. DeAngelo Brothers Inc. ("DBi") is a company incorporated in Pennsylvania which is also its principal place of business. Id. ¶ 4. DBi is the owner of patents for automated equipment designed for High Friction Surface Treatment ("HFST"), a form of highway maintenance. Id. ¶ 11. DBi was the original respondent here.

On or about May 22, 2016, DBi entered a License Agreement with a non-party, Triangle Grading & Paving, Inc. ("Triangle"). Id. ¶ 12. Under its terms, Triangle would receive a license from DBi to provide HFST services using DBi's patented equipment. Id. In return, Triangle would pay $35,000 per year during the Original Term or any Renewal Term for each vehicle which it has equipped with the necessary patented HFST technology. Id. ¶ 13. Triangle was also obligated to pay royalties for each square yard of material applied. Id.

On May 31, 2016, Rhino and Triangle entered a Sub-Licensing Agreement regarding DBi's patented technology. Id. ¶ 16. The agreement conferred the same rights and requirements (including payment obligations) outlined in the License Agreement with Triangle if Triangle elected to subcontract a portion of its work on a project-by-project basis to Rhino (with DBi's knowledge and consent). Id. ¶ 18. The Sub-License Agreement specified that the "Licensee and/or Sub-Licensee" was responsible for payments. Id. ¶ 19.

In June 2016, shortly after the Sub-License Agreement was executed, Rhino was provided with DBi's truck #1191, equipped with the patented technology. Id. ¶ 23, 25. Later, on or about February 17, 2017, DBi sold the truck to Rhino at a price of $355,000. See Pet., Ex. C. The bill of sale described "DBI # 1191 HFST Truck" as a "2006 Autocar" and listed the "HFST Truck & Body" as the sold property. Id. The parties dispute whether the patented HFST equipment itself was included in the sale of truck #1191.

Rhino retained Siemens Financial Services, Inc. ("Siemens") to finance the purchase. Pet. ¶ 32; Pet., Ex. H ¶ 127 ("Arb. Op."). Siemens provided Rhino with a loan of $320,000, but the listed collateral explicitly included the HFST equipment as well as the vehicle. Arb. Op. ¶ 128.

After making a first annual licensing fee payment in February 2017, it did not make subsequent licensing fee payments as required for two years. Id. ¶ 147. Nor did Rhino make any royalty payments to DBi. Id. ¶ 148.

On January 16, 2019, DBi sent Rhino a letter terminating Rhino as a licensee. Pet. ¶ 37. Rhino maintains it only completed its pre-termination obligations, but it did continue HFST work (although the parties dispute whether work completed was within the scope of the license agreement). Id. ¶ 38; see also ECF No. 1 at 503, 516. Rhino has not returned DBi's patented equipment or truck. Arb. Op. ¶ 161. Rhino subsequently defaulted on the loan from Siemens, resulting in a lawsuit being filed against the truck and the HFST patented equipment. Id. ¶ 215.

## II.  PROCEDURAL HISTORY

DBi filed a demand for arbitration on March 27, 2019, asserting that Rhino breached the Sub-Licensing Agreement by failing to make payments for the vehicle, royalties, and annual

3

licensing fees.  Pet. ¶ 39.  DBi has also asserted claims for trespass to chattels, conversion, fraud, and patent infringement.  See Arb. Op. at 1-2.

On April 19 and 20, 2021, an arbitrator, George E. Pallas ("The Arbitrator"), conducted a two-day arbitration.  Id. at 2.  The Arbitrator held in his Award and Opinion that Rhino breached the Sub-Licensing Agreement in part and found in favor of DBi for (i) $21,000 for Vehicle Payment and (ii) $11,406 for unpaid royalties.  Id. at ¶ 240.  The Arbitrator also ruled in favor of DBi on its tort claims, awarding $312,500 for trespass to chattels and conversion and found in favor of DBi on patent infringement and awarded $0.  Id.  Crucially, the Arbitrator found that the Bill of Sale for the purchase of the truck did not include the patented HFST equipment and that Rhino did not own the equipment.  Id. at ¶ 117, 140, 227.

On August 27, 2021, Rhino filed the instant petition to vacate the arbitration award.  ECF No. 1.  On October 12, 2022, DBi moved to substitute DeAngelo Contracting Services, LLC ("DCS") as the respondent pursuant to a contracting assigning the arbitration award to DCS.[1]  See Fed. R. Civ. P. 25; ECF No. 10. The Court granted the motion, substituting DCS as the respondent in this action.  See ECF No. 23.

### III.  JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332 ("diversity jurisdiction").  The parties are completely diverse and the award at issue exceeds the minimum amount in controversy of $75,000.  Nevertheless, as it is relevant to subsequent discussion,[2] the Court will also consider whether it has federal question jurisdiction under 28 U.S.C. § 1331.  Because there is an

---

[1] While both entities have the same founder, the two entities do not have common ownership and are not presently related.  See ECF 29 at 4-5.
[2] See infra, Section V.C.1.

arbitration provision within the operative contract, the Federal Arbitration Act ("FAA") applies. 9 U.S.C. § 1-2. However, the FAA does not independently create federal question jurisdiction. Freeman v. Pittsburgh Glass Works, LLC, 709 F.3d 240, 246 n.5 (3d Cir. 2013) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr., 460 U.S. 1, 25 n. 32 (1983) ("The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976 ed., Supp. IV) or otherwise.").

Thus, the Court's jurisdiction is limited to diversity jurisdiction under §1332.

## IV.   LEGAL STANDARD

Neither party disputes that the standard for the Court to vacate an arbitration award is demanding. Given "strong federal policy in favor of commercial arbitration, we begin with the presumption that the award is enforceable." Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 219 (3d Cir. 2012). The test to probe the validity of an arbitrator's decision is "singularly undemanding." Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct., 618 F.3d 277, 296 (3d Cir. 2010), as amended (Dec. 7, 2010) (citation omitted).

Nevertheless, a district court will vacate an arbitration award "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or

so imperfectly executed them that a mutual, final, and definite award upon the subject matters submitted was not made." 9 U.S.C. § 10(a).

When arguing that an arbitrator's award exceeded his or her authority by issuing an irrational award under 9 U.S.C. 10(a)(4), Petitioner must show that there is "absolutely no support at all in the record justifying the arbitrator's determinations" for a court to reject the award. Ario, 618 F.3d at 295-96 (3d Cir. 2010) (citing United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir.1995) (citations omitted and internal quotation marks omitted).

An alternative judicially created ground for vacating arbitration exists when a decision shows "manifest disregard for federal law." Goldman v. Citigroup Glob. Markets Inc., 834 F.3d 242, 255 (3d Cir. 2016). The doctrine's continued vitality is in question after the Supreme Court's decision in Hall Street Associates, LLC v. Mattel, Inc., 552 U.S. 576, 583 (2008). The Third Circuit has expressly declined to take a position on the issue. Whitehead v. Pullman Grp., LLC, 811 F.3d 116, 121 (3d Cir. 2016); Sabre GLBL, Inc v. Shan, 779 F. App'x 843, 849 (3d Cir. 2019) (NPO). The Court need not do so here to resolve this case. Even if manifest errors of law could justify vacatur, no such errors exist here.

V.     DISCUSSION

Petitioner does not contend that 9 U.S.C. 10(a)(1), (2), or (3) are applicable here. Instead, Rhino argues that under 9 U.S.C. 10(a)(4), the arbitrator exceeded his authority in making the award and committed manifest errors of law that warrant vacatur under the judicially created "manifest disregard of law" doctrine. Petitioner argues that both (a)(4) and the "manifest disregard" doctrine justify vacatur on the tort claims, while only the latter justifies vacatur of the

6

patent infringement claim. For the reasons below, the Court concludes the award must be upheld.

### A. The Arbitrator's Finding that the HFST Equipment Was Not Included in the Bill of Sale Had Colorable Justification

One factual inquiry lies at the heart of the legal issues contested here. As such, the Court will address it first as a threshold inquiry.

The parties dispute whether the HFST equipment attached to the truck which Petitioner sold to Respondent was included in the bill of sale for the purchase of the vehicle. Petitioner contends that it was clear from the plain language of the equipment's license agreement and bill of sale, as well as common sense, that the equipment was included in the purchase. The arbitrator concluded that the equipment itself was not included in the bill of sale because it was not explicitly listed. See Arb. Op. ¶ 117.

Petitioner argues that this finding is untenable. But "the task of an arbitrator is to interpret and enforce a contract. When he makes a good faith attempt to do so, even serious errors of law or fact will not subject his award to vacatur." Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 220 (3d Cir. 2012). It is only when the arbitrator "strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice, [that] he exceeds his powers, and his award will be unenforceable." Id. (citation and quotation marks omitted).

There is no such overreach here. The Court is not convinced that the arbitrator's interpretation of the bill of sale was wanton or arbitrary. The bill of sale lists the sold good as "HFST Truck and Body." Pet., Ex. C. Petitioner places considerable weight on a reference to

"equipment" in the disclaimer on the bill to insist that the HFST equipment must have been included. But this disclaimer uses boilerplate language and its existence does not prove that this specific sale included unlisted equipment. Moreover, as the arbitrator points out, the disclaimer in the bill of sale references "all vehicles and equipment listed *hereto*." Id. (emphasis added); see also Arb. Op. ¶ 117. The HFST equipment was not explicitly listed in the bill. Thus, the Court cannot find the arbitrator's conclusion wholly baseless. As there is at least colorable justification for the arbitrator's interpretation of the contract, the Court's review ends here.[3]

**B. Neither of Petitioner's Claims are Viable in Light of the Arbitrator's Finding Regarding the Bill of Sale**

In light of the Arbitrator's finding regarding the bill of sale, neither of Petitioner's claims can survive. First, Petitioner asks this Court to find that the arbitrator's decision to award tort damages to the original Respondent was a manifest error of law based on Pennsylvania's "gist of the action" doctrine. That doctrine holds that tort claims arising solely from a contract between the parties that are duplicative of a contract claim cannot survive. SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 216 (3d Cir. 2022) (citing Bruno v. Erie Ins. Co., 630 Pa. 79, 106 A.3d 48, 65 (2014). But that doctrine does not bar a conversion claim "when a plaintiff has a property interest in the thing that is the subject of a conversion claim." Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F. Supp. 2d 513, 529 (E.D. Pa. 2012) (Baylson, J.)

---

[3] The Arbitrator also found that Rhino was liable for trespass to chattels because it deprived DBi of use of its patented equipment after the sub-licensing agreement had been terminated. See Arb. Op. ¶ 214-17. Respondent argues that the Arbitrator's conversion award was based on the conclusion that Rhino had used the HFST equipment beyond the terms of the Sub License Agreement without authority. ECF No. 25 at 9. The Court need not examine this argument in detail because the finding that Respondent retained a property interest in the HFST equipment provides adequate colorable basis to uphold the award.

(citing Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 623 (E.D. Pa. 2010) (Buckwalter, J.)).[4]

While the Arbitrator did not explicitly discuss the gist of the action doctrine, the Arbitrator's factual finding that Respondent retained a property interest in the equipment attached to the truck (since it was not included in the bill of sale) precludes its application. Where the grounds for the Arbitrator's determination can be inferred from the facts of the case, the Court must confirm the Arbitration award. Popkave v. John Hancock Distributors LLC, 768 F. Supp. 2d 785, 795 (E.D. Pa. 2011) (Brody, J.) (citing Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 13 (2d Cir.1997). The Court can infer from the arbitrator's finding that Respondent retained a property interest in the truck that there was a colorable factual basis for declining to apply the gist of the action doctrine. Thus, the Court will reject Petitioner's argument.

Similarly, Petitioner's contention that the patent infringement award was erroneous also fails. Petitioner's sole argument on this issue is that the interpretation of the bill of sale was erroneous because the equipment attached to the truck must have been included, and that if the equipment

---

[4] Petitioner correctly notes that in Premier Payments, this Court declined to determine whether the gist of the action doctrine bars the conversion claim. But the rule stated by the Court comes from a line of prior decisions in this district and the Pennsylvania Superior Court. See Orthovita, Inc. v. Erbe, No. CIV.A.07–2395, 2008 WL 423446, at *6 (E.D.Pa. Feb.14, 2008) (Pratter, J.) (citing Berger Montague v. Scott & Scott, 153 F.Supp.2d 750, 753–54 (E.D.Pa.2001) (Joyner, J.) (citing Bernhardt v. Needleman, 705 A.2d 875, 879 (Pa.Super.Ct.1998). Other courts in this circuit still routinely apply this rule. See, e.g., Hirtle Callaghan Holdings, Inc. v. Thompson, No. CV 18-2322, 2022 WL 2048656 at *7 (E.D. Pa. June 7, 2022) (Surrick, J.); U.S. Borax Inc. v. Zamek, No. CV 19-1661, 2019 WL 13393064 at *2 (E.D. Pa. July 26, 2019) (Kearney, J.); Turuvekere v. ContinuServe, LLC, No. CIV.A. 12-5158, 2012 WL 5961957 at *3 (E.D. Pa. Nov. 28, 2012) (Yohn, J.).

was included, no patent infringement took place. For the reasons stated above, the Court will not disrupt the Arbitrator's finding on this factual issue.

Based on the arbitrator's detailed factual findings and legal analysis, Petitioner's contentions fall significantly short of establishing a manifest error of law or exceeding of authority. See Whitehead v. Pullman Grp., LLC, 811 F.3d 116, 120 (3d Cir. 2016) ("[The arbitrator's error must] not simply [be] an error of law, but [one] which so affects the rights of a party that it may be said that he was deprived of a fair hearing.") (citation and internal quotation marks omitted). If there was any error, it is not so clear cut that it justifies vacating the arbitrator's decision. Thus, the Court will deny the petition.

**C. Respondent's Cross Petition on Confirmation and Modification of the Award**

Respondent cross-petitions the Court to issue an order which:

(1) confirms the arbitration award;

(2) awards post-judgment interest; and

(3) orders the disassembly and handover of the HFST equipment which Petitioner has refused to return to Respondent.

For the reasons above, the Court will confirm the arbitration award. As for Respondent's additional requests, a Court may modify or correct the award under 9 U.S.C. § 11 in the case of:

(a) Material miscalculation or mistake in the description of property referred to in the award; or

(b) The arbitrator making an award upon a matter not submitted to the arbitrator unless it does not affect the merits of the decision; or

(c) An imperfect award in matter of form not affecting the merits of the controversy.

*1. Both Pre-Judgment and Post-Judgment Interest are Permissible and Warranted*

Awarding interest is not a reward, but merely ensures that a money judgment will be worth the same when received as when it was awarded. See Christian v. Joseph, 15 F.3d 296, 298 (3d Cir.1994). Accordingly, modifying the award to include post award interest does not affect the merits of the controversy at issue in the arbitration and the Court finds that it is appropriate here under §11(c). See also Sun Ship, Inc. v. Matson Navigation Co., 785 F.2d 59, 63 (3d Cir. 1986) (permitting district court to award post arbitration award, pre-judgment interest even when arbitrator has not done so). Such interest is appropriate given that the original award was made over two years ago and no longer reflects the value awarded at the time.

While Respondent appears to conflate the two in its request,[5] there are two types of interest at issue: post-award, pre-judgment interest, and post judgment interest.

First, pre-judgment, post-award interest. Respondent urges that the Court apply § 1961(a)'s interest rate, but the statute does not "by its own operation apply to prejudgment interest." Id. (citing Jarvis v. Johnson, 668 F.2d 740, 741 n. 1 (3d Cir.1982); see also 28 U.S.C. §1961(a) ("Interest shall be allowed on any money judgment in a civil case *recovered in a district court*.") (emphasis added); 28 U.S.C. §1961(c)(4) ("this section shall not be construed to affect the interest on any judgment of any court not specified in this section.").

The Third Circuit previously held in Sun Ship that when confirming arbitration awards covered by the FAA, a district court has discretion to determine the rate of prejudgment interest, including discretion to follow the rate set out in § 1961(a). 785 F.2d at 63. The Sun Ship panel

---

[5] Respondent requests damages for the award beginning each day "since judgment through DCS' execution and payment." ECF No. 25 at 1. While Respondent's request is ambiguous, the Courts reads this as a request for interest beginning from the date of the arbitration award, which would include both post award pre-judgment interest and post-judgment interest.

11

held that cases under the FAA are federal question cases and noted that in federal question cases, interest rates are at the discretion of the district court. Id.

However, Sun Ship's holding that cases under the FAA are federal question cases directly conflicts with established Supreme Court precedent stating that the FAA confers no federal question jurisdiction.[6] See Moses H. Cone Mem'l Hosp., 460 U.S. at 25, n.32.[7] Without federal question jurisdiction, the Court lacks the discretion to award interest based on the rate in § 1961(a).

Since this is solely a diversity jurisdiction case, whether to award prejudgment interest is a question of the relevant state's law. Meyer v. CUNA Mut. Ins. Soc., 648 F.3d 154, 162 (3d Cir. 2011) (citing Jarvis, 668 F.2d at 741). The operative contract whose provisions gave rise to the arbitration is expressly governed by Pennsylvania law. See Pet., Ex. D, Attachment A ¶ 7.1, 7.2. Pennsylvania law holds that a judgment bears interest from the date of the verdict *or award*. 42 Pa.C.S.A. § 8101; see also InterDigital Commc'ns Corp. v. Fed. Ins. Co., 607 F. Supp. 2d 718, 721 (E.D. Pa. 2009) (Robreno, J.) ("On an arbitration award, post-judgment interest begins to run from the date of the award.") (citing Perel v. Liberty Mutual Ins. Co., 839 A.2d 426 (Pa.Super.2003)). Prejudgment interest accrues at the rate of six percent per annum. 41 P.S. § 202; see also Checkers Drive-In Restaurants v. Pandya, 2020 WL 1876054, at *3 (E.D. Pa. Apr.

---

[6] See supra, Section III.
[7] Other circuits have questioned Sun Ship's ruling on this question. See Northrop Corp. v. Triad Int'l Mktg., S.A., 842 F.2d 1154, 1155 (9th Cir. 1988) ("Sun Ship rests on the faulty premise that suits under the Federal Arbitration Act lie within federal question jurisdiction. This premise has been rejected by the Supreme Court.") Indeed, the Third Circuit has held that the FAA confers no federal question jurisdiction. See Freeman, 709 F.3d at 246, n.5. While courts in this circuit have not explicitly questioned Sun Ship's federal question holding, the Court will follow the Third Circuit's more recent precedent in Freeman, as well as the Supreme Court's holding in Moses H. Cone Mem'l Hosp.

15, 2020) (Joyner, J.) (applying the Pennsylvania six percent per annum interest rate to prejudgment interest). The Court will therefore award pre-judgment interest at a rate of six percent per annum on any unpaid portion of the award, starting from the date of the award until the date of this opinion.[8]

Post-judgment interest must be assessed separately. Even in diversity cases, post-judgment interest is governed by 28 U.S.C. § 1961 rather than by state law. See Pierce Assocs., Inc. v. Nemours Found., 865 F.2d 530, 548 (3d Cir. 1988) ("the matter [of post-judgment interest] is governed by 28 U.S.C. notwithstanding that this is a diversity action.").[9] The Court will therefore award post-judgment interest on the amount of the award calculated under § 1961 from the date of this judgment until the date of payment. This interest rate will be equal to the weekly average 1-year constant maturity yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding this opinion.

2. *Handover of the Truck Would Materially and Improperly Alter the Arbitration Award*

The requested handover of the truck is a different matter. Respondent has failed to establish why 9 U.S.C. § 11 would apply to the handover of the truck in their cursory request. Respondent seems to suggest if the Court confirms the arbitration award, the factual findings of the Arbitrator can be imputed to the Court. Declining to vacate an arbitration award is not tantamount to

---

[8] Other district courts in Pennsylvania have made similar interest awards in diversity cases. See, e.g., InterDigital Commc'ns Corp., 607 F. Supp. 2d at 721; AmericanAnglian Env't Techs., L.P. v. City of Scranton, Pa., 2006 WL 1214790, at *2 (E.D. Pa. May 4, 2006) (Bartle, C.J.).
[9] See also InterDigital Commc'ns Corp., 607 F. Supp. at 720 n.6 ("[P]rejudgment interest is governed by state law, but once an arbitration award is confirmed in federal court, the rate specified in 28 U.S.C. § 1961(a) applies."); Northrop Corp., 842 F.2d at 1155 ("It is settled that even in diversity cases [p]ost-judgment interest is determined by federal law.") (citation and internal quotation marks omitted); Allstate Ins. Co. v. Clymer, No. CIV.A. 93-0348, 1994 WL 423875 at *2 (E.D. Pa. Aug. 11, 1994) (Green, J.) (collecting cases).

13

express endorsement of each factual findings of the Arbitrator. The Court does not weigh in on which side the preponderance of the evidence would favor. It finds only that there is insufficient basis to meet the high threshold necessary to vacate the Arbitrator's finding.

The Court finds insufficient grounds to modify the Arbitrator's award to include a handover of the truck under any of 9 U.S.C. § 11's three provisions:

a) There is no mistake alleged in the description of the property or calculation of the award.

b) There is no indication that any award was made upon a matter not submitted to the Arbitrator.

c) Transfer of the truck would substantively alter the award and implicate the merits of the controversy.

Thus, the request to order the disassembly and handover of the equipment will be denied.

## VI. CONCLUSION

In sum, the Court will deny the Petition to Vacate (ECF No. 1). The Court will grant Respondent's Cross-Petition (ECF No. 7) in part and deny it in part. To the extent that the cross-petition requests confirmation of the award and interest, the Court will grant it – awarding pre-judgment interest calculated according to 41 P.S. § 202 and post-judgment calculated according to § 1961(a). To the extent that the cross-petition requests handover of the truck, the Court will deny it.

An appropriate order follows.